UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————————x

UNITED STATES OF AMERICA

V.                                                                                           10 CR 391-67 (CM)

ROBERT HERRING,

        Defendant.

——————————————————————x

DECISION AND ORDER DENYING MOTION FOR COMPASSIONATE RELEASE

McMahon, J.:

    Robert Herring pleaded guilty to participating in a racketeering conspiracy, participating in a conspiracy to distribute and possess with intent to distribute 280 grams and more of crack cocaine, and using and carrying firearms during and in relation to the crack-cocaine conspiracy. The Court sentenced Herring to the applicable statutory-mandatory minimum 180 months' imprisonment—a below Guidelines sentence. He is currently serving his sentence at FCI Williamsburg in Salters, South Carolina—his projected release date is November 22, 2025.

    Before the Court is Herring's motion for compassionate release filed pursuant to 18 U.S.C. §3582(c)(1)(A)(i), as amended by the First Step Act ("FSA"), P.L. 115-391. Herring suffers from mental illness and is borderline obese. Herring says the pandemic has caused him "anguish and anxiety," and that his mental illness has been exacerbated by the frequent lock downs and other restrictions the BOP has implemented to combat the spread of COVID-19. He says he "fears for

1

his safety and the safety of his loved ones and requests Compassionate Release." (Sharkey Letter Motion, 10/27/21, at 1).

The Government opposes the motion arguing that Herring has not demonstrated the extraordinary and compelling circumstances demanded by the statute for a sentence reduction, and that even if he had, the applicable Section 3553(a) factors would "cry out for Herring's punishment to be executed as imposed." Government's Opposition at 1-2.

Compassionate Release

Under 18 U.S.C. § 3582(c), a district court "may not" modify a term of imprisonment once imposed, except under limited circumstances. One such circumstance is the so-called compassionate release provision, which provides that a district court "may reduce the term of imprisonment" where it finds "extraordinary and compelling circumstances." § 3582(c)(1)(A)(i). A motion under this provision may be made by either the Bureau of Prisons or a defendant, but in the latter case only "after the defendant has *fully exhausted all administrative rights* to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.* (emphasis added). Thus, where a compassionate release motion is brought by a defendant who has not "fully exhausted all administrative rights," the district court "may not" modify his term of imprisonment.

If a defendant demonstrates that he has exhausted his administrative remedies with the BOP, the Court must then consider whether the defendant has met his burden of establishing "extraordinary and compelling circumstances" warranting release.[1] In the past, this Court—and

---

[1] "A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue." *See, e.g.*, United States v. Butler, 970 F.2d 1017, 1026 (2d Cir. 1992).

many of my district court colleagues—looked to United States Sentencing Guidelines § 1B1.13 (the applicable Guidelines section for sentencing reductions pursuant 18 U.S.C. § 3582(c)(1)(A)(i)), for guidance on what constituted "extraordinary and compelling circumstances."[2] That changed on September 25, 2020, when the United States Court of Appeals for the Second Circuit held that § 1B1.13 is not applicable to a motion brought by a defendant in the district court. *United States v. Brooker* No. 19-32180-CR, 2020 WL 5739712, at *6 (2d Cir. Sept. 25, 2020). The Second Circuit reasoned that the language of § 1B1.13—language that has not been updated since the passing of the First Step Act—addressed only sentencing reduction motions initiated by the Bureau of Prisons. *Id.* In making clear that the district court was not constrained by the narrow grounds for granting compassionate release in § 1B1.13, the Second Circuit declared unequivocally that "district courts have discretion to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [the court] in motions for compassionate release," and that

---

[2] The Application Notes to Section 1B1.13 describe the circumstances under which "extraordinary and compelling reasons" exist. *See* § 1B1.13 comment (n.1). For example, the medical circumstances ground reads as follows:

(A)  Medical Condition of the Defendant.—

    (i)  The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia

    (ii)  The defendant is—

        (I)  suffering from a serious physical or medical condition,

        (II)  suffering from a serious functional or cognitive impairment, or

        (III)  experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self- care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.* § 1B1.13 comment (n.1).

"neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion." *Id* at *7.

What Brooker did not change, however, is the mandate in § 3582(c)(1)(A)(i) that a court contemplating a defendant's release pursuant to that section must first consider the sentencing factors at 18 U.S.C. § 3553(a), to the extent they are applicable, and determine whether they counsel for or against release. A court may still deny compassionate release where the § 3553(a) factors override, in any particular case, what would otherwise be extraordinary and compelling circumstances.

Herring Exhausted his Administrative Remedies in the Bureau of Prisons

Herring sent two letter-requests to the wardens of two BOP facilities seeking a motion for a reduction in sentence—on October 8, 2020, and October 4, 2021—and attached those letters to his letter-motion. (Motion Ex. A, B). Although Herring does not indicate whether the BOP responded to those letters, the submissions of the requests themselves more than 30 days ago without a response from the warden satisfy Section 3582(c)'s exhaustion requirements. *See* 18 U.S.C. § 3582(c)(1)(A).

Accordingly, Herring has exhausted his administrative remedies, and the present motion for compassionate release is properly before the Court.

The Motion Before the District Court

Herring argues that the prevalence of the COVID-19 at FCI Williamsburg—when coupled with his mental illness and obesity—qualifies as an extraordinary and compelling reason to release him from prison. There is no dispute that defendant suffers from a certain mood disorder and is mildly obese; conditions that the CDC has recognized as COVID-19 risk factors. However, the BOP response to the pandemic generally, and the medical

4

treatment provided to Herring specifically, has greatly reduced Herring's risk of contracting the virus, and if he should contract the virus, from suffering a severe outcome.

Regarding Herring's psychiatric state: Herring reported having no mental health issues prior to his arrest in this case. (PSR ¶ 99). However, when he first appeared before this Court, he began to exhibit erratic behavior. The parties all agreed that Herring should undergo a psychiatric evaluation. Herring was sent to the federal medical facility at Devens Massachusetts to be diagnosed and receive any appropriate treatment. There, Herring was prescribed a regimen of psychiatric medication and his mental state stabilized. He was returned to New York, where the Court found him competent to plead guilty—as he wished to do—to the conspiracies and firearms charges. After the Court imposed sentence, the BOP took charge of defendant, designating him to various facilities over the last decade, including stints in mental health facilities in Boston and Atlanta.

According to his BOP medical records, Herring has continued taking psychiatric medications to control his mood disorder. A report from of a clinical encounter on May 15, 2020, is representative of the care Herring has been receiving while in BOP custody. When asked by the attending physician "How was he doing?" he responded "Things are going good. I'm definitely sleeping enough with both doses." The clinician further documented the encounter:

> When offered to change to pm dosing only, he expressed a preference to continue current twice daily dosing of Zyprexa Zydis 5mg. Compliant per self report and review of MAR summary report.
>
> No reported behavioral changes or incidents have occurred since release to general population approx. two weeks ago s/p acute manic episode with psychosis. Exercising and maintaining communication with family and spouse. Appropriate anxiety about family and spouse who reside in NY, one of the hot spots for the pandemic. Reported that his spouse is exploring local resources for support to become more knowledgeable about mental illness.

Herring BOP Medical Records. The "Assessment" field in the report included what appears to be Herring's psychiatric diagnosis: "Bipolar I Disorder: Current or Most Recent Episode Manic: With Psychotic Features, F31.2 - Current Other Specified Anxiety Disorder, F41.8 – Current." *Id.* Thus, it would appear from the records that the BOP medical staff has been successful in managing Herring's psychiatric issues.

Regarding Herring's weight: BOP medical records note that his height is 72 inches and his weight is approximately 234 pounds. *Id.* This results in a Body Mass Index (BMI) of 31.7, which is above the obesity cutoff of 30. Herring argues that this "places him at risk of developing diabetes, high blood pressure, heart attacks, bone and joint problems, sleep apnea, cancer, impaired immune function and decreases lung capacity making ventilation more difficult." He also points out that "studies of COVID-19 cases suggest that the risks of hospitalization, intensive care unit admission, invasive mechanical ventilation and death have a higher occurrence with increasing BMI." All very true. Fortunately, Herring's medical records indicate that he suffers from none of the maladies associated with obesity. *Id.* At bottom, Herring's medical records suggest that the BOP medical staff is providing him with appropriate care.

Moreover, any increased COVID-19 risk resulting from Herring's mood disorder or obesity has been significantly mitigated by the vaccination campaign at FCI Williamsburg. As of today, the facility has administered at least two doses of the COVID-19 vaccine to 1,464—about 94%—of its 1,553 inmates, outpacing by far the 76% of the population of the United States that has received at least two doses. *See* https://covid.cdc.gov/covid-data-tracker/#vaccinations. And most significantly, Herring's medical records show that he has been fully vaccinated (three doses): he received the Pfizer-BioNTech vaccine on March 20, 2021, and April 7, 2021, and the

6

Moderna booster on October 27, 2021 (Med. 93). As several courts have concluded, the risk of COVID-19 for a vaccinated individual is substantially reduced to the point that a defendant will typically not be able to demonstrate extraordinary and compelling reasons after he has been vaccinated. *See, e.g.*, *United States v. Mena*, No. 16 CR. 850 (ER), 2021 WL 2562442, at *3 (S.D.N.Y. June 23, 2021) ("Access to an approved COVID-19 vaccine generally counsels against compassionate release based on COVID risk, due to the strong evidence of the effectiveness of each of the vaccines."); *United States v. Santana*, No. 18-CR-865 (VEC), 2021 WL 1819683, at *2 (S.D.N.Y. May 6, 2021) (finding no extraordinary circumstances due to "the efficacy of the COVID vaccines, and specifically the Pfizer vaccine" and citing data showing Pfizer vaccine is 94% effective against COVID-19 hospitalization); *United States v. Orlandez-Gamboa*, No. 99 CR. 654 (CM), 2021 WL 2582077, at *3 (S.D.N.Y. June 23, 2021) (finding defendant had failed to demonstrate extraordinary and compelling circumstances, even though he was in high-risk age group, because he was "fully vaccinated against COVID-19"). Indeed, recent data confirms that the COVID-19 vaccines dramatically reduce the risk of death or serious illness from the various variants of COVID-19, even the ubiquitous Omicron Variant https://www.cdc.gov/coronavirus/2019-ncov/variants/omicron-variant.html?s_cid=11734: omicron %20vaccine%20effectiveness:sem.ga:p:RG:GM:gen:PTN:FY22.

As for the infection rate at FCI Williamsburg: The Omicron variant had recently caused—like in every other segment of the population—a steep rise in COVID-19 cases, followed by a precipitous drop-off over several-weeks. Indeed, in early January, the facility was reporting no inmates testing positive. BOP COVID-19 Dashboard. ttps://www.bop.gov /coronavirus/. By mid-February, the institution was reporting 55 of its 1,553 inmates (approximately 3.5% of its population) testing positive. *Id.* But as of March 3, 2022, the

facility had beaten back the Omicron surge and is now again reporting zero positive tests among inmates and staff. This temporary surge in COVID cases at FCI Williamsburg is typical of the pattern of cases that the highly infectious, but mildly virulent Omicron variant has caused across the nation—both inside and outside prison walls.

To the extent Herring is arguing the challenging conditions of confinement caused by the pandemic—i.e., quarantines, limited visitation, etc.—warranted a sentence reduction, essentially every inmate who has been in BOP custody at any time since March 2020 would be entitled to a sentence reduction. *See United States v. Bryant*, 2021 WL 738838, at *3 (S.D.N.Y. Feb. 24, 2021) (explaining that the severe conditions of confinement during the pandemic are "not unique to Mr. Bryant and do not militate strongly in favor of finding there are extraordinary and compelling reasons for a sentence reduction").

Accordingly, Herring has failed to demonstrate that his current medical condition and the threat of contracting COVID-19 at Williamsburg FCI present extraordinary and compelling circumstances warranting his release.

Even if Herring had met his threshold burden of demonstrating an "extraordinary and compelling" reason to be considered for compassionate release, the sentencing factors at 18 U.S.C. § 3553(a)—which the Court must consider in connection with a motion for a sentence reduction, *see* 18 U.S.C. § 3582(c)(1)(A)—counsel against a sentence reduction.

Herring was a member of the dreaded Bloods Gang that continues to this day to ravage the Newburgh community. He participated in the group beating and knifing murder of one man (he admitted to being one of the stabbers), participate in other shootings, and was an active participant in the drug organization that littered the streets of Newburgh with crack cocaine. Although Herring was looking at a possible life sentence for his conduct as initially charged, the Government—in

8

recognition of his demonstrated remorse, his post-arrest mental breakdown in prison, and the support of his father (a one-time gang member, turned community activist)—offered Herring an opportunity to plead to reduced charges that resulted in advisory Guidelines range of 211 to 248 months' imprisonment, with a statutory mandatory-minimum sentence of 15 years. The Court—principally for the same reasons the Government allowed defendant to plead guilty to reduced charges, and after listening to defense counsel's passionate plea for leniency—sentenced Herring to the mandatory minimum, 180 months' imprisonment.

Given the serious nature of Herring's criminal conduct, the considerable compassion he has already received from the Government in its charging decision and from the Court at sentencing, and after reviewing his prison records—which show some involvement in rehabilitative programs, but also some disciplinary infractions—the Court finds that a further reduction in sentence to be unwarranted.

The motion for compassionate release is denied.

Dated: March 4, 2022

_____
Colleen McMahon
United States District Court Judge